# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: June 11, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| MICHAEL BRAUN, *on behalf of* | * | PUBLISHED |
| son H.B., *a minor*, | * | |
| | * | No. 17-1571V |
| Petitioner, | * | |
| v. | * | Special Master Nora Beth Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Reasonable |
| AND HUMAN SERVICES, | * | Basis. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

<u>Joseph P. Shannon</u>, Shannon Law Group, PC, Woodbridge, IL, for petitioner.
<u>Heather L. Pearlman</u>, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 20, 2017, Michael Braun ("petitioner"), on behalf of his minor child, H.B., filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 <u>et seq.</u> (2012).[2] Petitioner alleged that H.B. developed encephalopathy and resulting developmental delays following his receipt of the FluMist influenza ("flu") vaccine on October 22, 2014. Petition at 1. On January 25, 2019, the special master assigned to this case at the time issued a decision determining petitioner was not entitled to compensation and dismissing the petition. Decision dated Jan. 25, 2019 (ECF No. 30).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

On February 22, 2019, petitioner filed a motion for review and a memorandum in support. Petitioner's Motion for Review, filed Feb. 22, 2019 (ECF No. 31). Respondent filed his response to petitioner's motion for review on March 22, 2019. Respondent's Memorandum in Response to Petitioner's Motion for Review, filed Mar. 22, 2019 (ECF No. 34). On June 19, 2019, Judge Campbell-Smith denied petitioner's motion for review. Opinion & Order ("Order") dated June 19, 2019 (ECF No. 35).

On December 20, 2019, petitioner filed a motion for leave to file his fee application out of time, along with a motion for attorneys' fees and costs.[3] Petitioner's Motion for Leave to File a Petition for Attorneys' Fees and Costs, filed Dec. 20, 2019 (ECF No. 41). Petitioner's counsel requested $11,405.00 in fees and $6,637.77 in costs, plus a $500 filing fee paid by petitioner, for a total request of $18,542.77.[4] Petitioner's Motion for Fees and Costs ("Pet. Mot."), filed Dec. 20, 2019, at ¶ 7 (ECF No. 41-1). Respondent filed a response on January 3, 2020, opposing petitioner's motion for fees and costs on the ground that the claim lacked a reasonable basis. Respondent's Response to Motion for Attorneys' Fees and Costs ("Resp. Response"), filed Jan. 3, 2020 (ECF No. 42). Respondent emphasized that the previous special master assigned to the case found petitioner's claim lacked reasonable basis. Id. at 8-9. In his reply dated February 3, 2020, petitioner maintained that his petition possessed reasonable basis. Pet. Reply in Support of His Petition for Attorney's Fees & Costs ("Pet. Reply"), filed Feb. 3, 2020 (ECF No. 44).

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

## I.    PARTIES' CONTENTIONS[5]

### A.    Petitioner's Contentions

Petitioner argues (1) the previous special master's Decision did not apply the appropriate standard for determining reasonable basis; (2) petitioner's petition possessed reasonable basis;

---

[3] Respondent "d[id] not object to granting petitioner's motion for leave to file his motion for attorneys' fees and costs out of time." Respondent's Response to Motion for Attorneys' Fees and Costs ("Resp. Response"), filed Jan. 3, 2020, at 7 n.1 (ECF No. 42). On January 6, 2020, the undersigned granted petitioner's motion for leave. Order dated Jan. 6, 2020 (ECF No. 43).

[4] Upon review of petitioner's documentation in support of his attorneys' fees and costs, the undersigned determined the total amount of fees and costs requested differs from the amount provided in petitioner's motion. According to petitioner's time entries, petitioner requests $12,763.50 in attorneys' fees. See Pet. Mot., Ex. A. As for costs, petitioner's costs sheet shows costs totaling $6,719.23. See Pet. Mot., Ex. C at 1. However, upon review of the receipts, some receipts were either not provided or do not match the amount listed on the costs sheet summary. After making the necessary deductions, the undersigned determines petitioner's costs are $6,573.72. Lastly, the undersigned notes the filing fee is $400.00, not $500.00 as requested in petitioner's motion.

[5] A detailed factual summary and procedural history are provided in the special master's Decision and Judge Campbell-Smith's Order, and will not be repeated here. See Decision at 2-5; Order at 2-4.

and (3) petitioner is entitled to fees and costs for the work performed through the Decision.  Pet. Reply at 2-10.

First, petitioner contends the previous special master's Decision did not apply the appropriate standard for determining reasonable basis, and in fact applied a higher burden of proof.  Pet. Reply at 3-4.  Petitioner explains that the special master, in concluding petitioner's claim lacked reasonable basis, applied the Althen[6] prongs, "which demands a higher burden of proof than the reasonable basis standard," and "[w]hether a claim has a reasonable basis is a determination separate and apart from whether the record establishes a preponderant link between the vaccine and H.B.'s injury."  Id.  Therefore, because "the special master conflat[ed] the two standards and [did] not perform[] a full analysis of the [p]etition's reasonable basis," petitioner argues the undersigned should not consider the Decision in her determination of whether the petition had reasonable basis.  Id. at 4.

Second, petitioner maintains his petition had reasonable basis because (a) the petition contained sufficient medical and scientific support for petitioner's claim; (b) petitioner had an expert who was available to opine in his case; and (c) petitioner's claim is common in the Program.  Pet. Reply at 4-9.  In support of his claim that his petition included sufficient medical and scientific support, petitioner cites to various records referencing the temporal relationship and association between petitioner's flu vaccine and his development of encephalopathic symptoms.  See id. at 5-6.

Petitioner next notes that his expert, Dr. Lawrence Steinman, opined that the petitioner had reasonable basis before petitioner's counsel took the case, and "his willingness to serve as [p]etitioner's expert and support a theory of causation is evidence of the [p]etition's reasonable basis."  Pet. Reply at 6.  He contends that "[t]he mere fact of Dr. Steinman's involvement [] should be enough for this court to find that [p]etitioner's petition had a reasonable basis."  Id. at 7.  Petitioner compares his case to Spahn v. Secretary of Health & Human Services,[7] where expert reports were required to show a link between the vaccine and injury, and argues that "despite [p]etitioner's treating doctors linking the injury and the vaccine, the special master denied him the opportunity to file an expert report."  Id. at 8.  In concluding that reasonable basis existed at all times throughout litigation, petitioner asserts that claims such as his "are common enough in the [P]rogram to have facial credibility" and cites to medical literature and past decisions in the Program as support.  Id. at 8-9.

Third, petitioner argues that he is entitled to fees and costs for work performed through the Decision dismissing his case.  Pet. Reply at 9.  Because the previous special master directed petitioner to file a brief showing why his claim should not be dismissed due to lack of reasonable basis after the August 23, 2018 status conference, petitioner maintains he should be entitled to fees and costs associated with the work performed pursuant to the special master's order.  Id. at 9-10.  He argues that if the undersigned determines petitioner did not possess reasonable basis to bring the motion for review, then the undersigned should find petitioner possessed reasonable basis through the briefing ordered by the previous special master.  Id. at 10.

---

[6] Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

[7] No. 09-386V, 2014 WL 12721080 (Fed. Cl. Spec. Mstr. Sept. 11, 2014), mot. for rev. denied, 133 Fed. Cl. 588 (2017).

Petitioner concludes his petition had reasonable basis through his motion for review. Pet. Reply at 10. In the alternative, he concludes he possessed reasonable basis through the briefing ordered by the previous special master. Id.

### B.     Respondent's Contentions

Respondent argues the evidence and the analyses from the Decision dismissing petitioner's case and the Order denying petitioner's motion for review show petitioner's claim had no reasonable basis. Resp. Response at 8. Specifically, respondent points to a status conference held on August 23, 2018 where the previous special master "impressed upon [p]etitioner [his] strongly-held view that [the] claim likely faced reasonable basis problems given its overall nature." Id. (quoting Decision at 4). Particularly, respondent notes the fact the special master found "the record did not support [petitioner's] assertion that H.B. had experienced any type of encephalopathic reaction to the FluMist vaccine he received, or that his developmental regression was more than temporally related to any symptom alleged to be vaccine-induced." Id. (quoting Decision at 4). Respondent also notes that the special master's Decision found "the claim as alleged lack[ed] reasonable basis." Id. at 9 (quoting Decision at 8).

Respondent next turns to Judge Campbell-Smith's Order where she concluded that the reasonable basis standard was not applied in the Decision, but even if it was, such error was harmless. Resp. Response at 9 (citing Order at 7). Citing to Judge Campbell-Smith's Order, respondent argues the special master (1) wrote a "thorough evaluation of the record" in the Decision, which "support[s] [his] unambiguous conclusion that there was no evidence of an encephalopathic reaction close-in-time to the vaccination;" (2) "appropriately considered H.B.'s long history of developmental issues;" and (3) "was within his discretion to conclude that an expert report would not cure the deficiencies in the record, which in and of itself was fatal to petitioner's claim." Id. (citing Order at 6-10). Respondent concludes that "petitioner has not (and could not) establish that his claim was supported by reasonable basis." Id.

## II.    DISCUSSION

### A.     Reasonable Basis

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. Here, respondent does not challenge petitioner's good faith; instead, respondent asserts that petitioner's claim had no reasonable basis.

"Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012). In the interest of preserving this discretion, courts have declined to impose "a reasonable basis test that turns solely on evidentiary standards." Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 287 (2014). Instead, it has been described simply as "an objective inquiry unrelated to counsel's conduct." Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 636 (Fed. Cir. 2017). While incomplete medical records do not prohibit a finding of reasonable basis, Chuisano, 116 Fed. Cl. at 288, the Vaccine Act contemplates "a simple

4

review of available medical records to satisfy the attorneys that the claim is feasible" prior to filing. Silva, 108 Fed. Cl. at 405.  However, "[a] claim can lose its reasonable basis as the case progresses." R.K. v. Sec'y of Health & Human Servs., 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Here, the undersigned determines there was no objective evidence of encephalopathic symptoms temporally associated with the vaccination to support a finding of reasonable basis.

As thoroughly explained in the special master's Decision and Judge Campbell-Smith's Order, they found no medical record evidence to support petitioner's contention that H.B. experienced an acute encephalopathic reaction associated with his flu vaccine.  The undersigned has reviewed the medical records and concurs.

At eight-years old, H.B. received the flu vaccine at issue.  H.B's pre-vaccination history was significant for developmental and speech delays beginning more than six years prior to vaccination.  At his eighteen-month well-visit, H.B. was diagnosed with a delay in speech development.  Similar diagnoses and observations were made at his two-, three-, and four-year well-visits.  At his four-year well-visit, H.B.'s doctor also noted sensory issues.  At his five-year well-visit, H.B. was assessed with a listening comprehension disability.  At preschool, H.B. exhibited language skills in the low range.  At his six- and seven-year well-visits, H.B. was noted to be participating in occupational and speech therapy.  The records clearly show H.B. began experiencing developmental problems at eighteen-months old—more than six years prior to H.B.'s receipt of the vaccine at issue.

Petitioner maintains that an educational assessment dated over one month post-vaccination and a comprehensive pediatric neurodevelopment evaluation dated four months post-vaccination support a temporal relationship between the vaccine at issue and H.B.'s regression and development of encephalopathic symptoms.  However, none of the medical records from that time period make any reference to H.B. having symptoms of or being diagnosed with encephalopathy.  H.B. received the flu vaccine at issue on October 22, 2014.  Approximately two months later, on December 15, 2014, H.B. saw a neurologist who diagnosed him with Attention-Deficit/Hyperactivity Disorder ("ADHD").  ADHD is not encephalopathy.  Further, there was no reference at that visit to H.B.'s vaccination. Pet. Exhibit ("Ex.") 1 at 219-20.  Moreover, on January 28, 2015, H.B. visited his pediatrician who documented "[n]o obvious signs of increasing . . . regression" and assessed H.B. with "[l]earning difficulties" and possible "underlying development delay." Id. at 302-03.  The pediatrician did not note any findings that were consistent with encephalopathy or diagnose H.B. with encephalopathy.

Petitioner further argues the comprehensive pediatric neurodevelopment evaluation conducted in February 2018 discussed "the influenza infection . . . as a possible cause of [H.B.'s] regression." Pet. Reply at 5; see Pet. Ex. 1 at 1367.  However, the comprehensive pediatric neurodevelopment evaluation merely contains a note to rule out the flu *infection*—not the flu *vaccine*—as a cause.

As further support, petitioner relies on a letter from Dr. Rosario Trifiletti, H.B.'s neurologist, written on August 3, 2018—almost four years after the vaccination at issue. Pet. Ex. 3 at 1 (ECF No. 27-3).  Dr. Trifiletti's later-in-time letter states that he evaluated H.B. for an "autoimmune encephalopathy [], which seemed to occur with sudden onset following an

influenza vaccine in early 2015." Id.  However, Dr. Trifiletti did not examine H.B. until April 2015 and he did not diagnose H.B. until over one-year post-vaccination, on November 20, 2015. See Pet. Ex. 1 at 1153, 1159-61.  Additionally, in three of Dr. Trifiletti's previous letters written on July 5, 2016, February 15, 2017, and July 1, 2017, Dr. Trifiletti writes H.B. "presented in early 2015 with the sudden onset of rage and decline" and H.B. "continues to have signs [of] autoimmune encephalopathy" but fails to mention any vaccination.  Id. at 1145, 1180, 1210.

Based on a review of the contemporaneous medical records from birth to one year after H.B.'s receipt of the flu vaccine, there is no objective evidence to support a reasonable conclusion that H.B. sustained encephalopathy or any other vaccine-related injury.

Petitioner relies on petitioner's affidavit to support a finding of a temporal relationship. In his affidavit, petitioner averred that within days, he "noticed a deterioration in H.B.'s neurological function, including a deterioration in his fine motor skills," and within months, he "observed H.B. experiencing hallucinations and exhibiting increasingly anxious behaviors."  Pet. Ex. 1 at 1443.  However, without contemporaneous medical records supporting petitioner's affidavit, the affidavit alone is insufficient.  See, e.g., § 13(a)(1) (noting compensation cannot be awarded "based on the claims of petitioner alone"); Murphy v. Sec'y of Health & Human Servs., 30 Fed. Cl. 60, 61 (1993) (affirming the special master's finding of no reasonable basis when the medical records contradicted petitioner's claims), aff'd, 48 F.3d 1236 (Fed. Cir. 1995); Mathis v. Sec'y of Health & Human Servs., No. 08-570V, 2014 WL 7664951, at *14 (Fed. Cl. Spec. Mstr. Dec. 23, 2014) ("[R]easonable basis . . . cannot be established if the medical records do not support the claims made in the petition.").

There is nothing in the medical records to support petitioner's claim that a deterioration in H.B. began within days, or even within months, of vaccination.  In Chuisano, the Court found no evidence supporting a causal connection and instead, petitioner relied solely on petitioner's affidavit, which the Court determined insufficient.  Chuisano, 116 Fed. Cl. at 290.

In Hooker, the special master determined petitioners had no reasonable basis in part because "medical records plainly contradict[ed] several of [p]etitioners' key factual allegations as to the timing or existence of symptoms."  Hooker v. Sec'y of Health & Human Servs., No. 02-472V, 2017 WL 3033940, at *17 (Fed. Cl. Spec. Mstr. Apr. 11, 2017).  Although petitioners contended S.R.H.'s symptoms began after vaccination, the special master determined the medical records showed S.R.H.'s symptoms first appeared prior to vaccination.  Id.  Furthermore, representations from petitioners showed symptoms were present prior to vaccination and were contradicted by the contemporaneous medical records.  Id. at *18-20.

The special master in Hashi found no reasonable basis to pursue a claim that was strongly contradicted by the medical records.  Hashi v. Sec'y of Health & Human Servs., No. 08-307V, 2016 WL 5092917, *10-11 (Fed. Cl. Spec. Mstr. Aug. 25, 2016).  The special master found that "the divergence between the [p]etitioners' factual assertions and the facts shown by the medical records was especially great."  Id. at *11 (emphasis omitted).

Here, there is nothing in the medical records to support petitioner's contentions. Petitioner cannot use an affidavit of H.B.'s father, who is not a health care provider, to establish reasonable basis when the medical records do not support a finding of encephalopathy.  Like the courts in Chuisano, Hooker, and Hashi, the undersigned finds petitioner's allegations alone insufficient.

Petitioner next argues Dr. Steinman's willingness to serve as petitioner's expert in this case is evidence of the petition's reasonable basis. However, a finding of reasonable basis "requires more than the filing of medical records and retaining an 'expert willing to testify.'" Fuesel v. Sec'y of Health & Human Servs., No. 02-95V, 2014 WL 1379241, at *4 (Fed. Cl. Spec. Mstr. Mar. 19, 2014); Young v. Sec'y of Health & Human Servs., No. 05-207V, 2014 WL 1509885, at *5 (Fed. Cl. Spec. Mstr. Mar. 27, 2014). Further, "expert testimony in and of itself does not determine reasonableness." Murphy, 30 Fed. Cl. at 62 (citing Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 33 (1992) (finding it unreasonable to grant attorneys' fees based on the mere existence of expert testimony)).

In Fuesel, the special master denied petitioner's application for interim costs because he found petitioner had not established a reasonable basis to proceed or that the interim costs sought were reasonable. Fuesel, 2014 WL 1379241, at *4-5. Like the undersigned, the special master in Fuesel found "the medical records filed . . . do not demonstrate or even suggest vaccine causation." Id. at *4. Additionally, the Fuesel petitioners, like petitioner here, argued reasonable basis existed because they had an "expert willing to testify." Id. In Fuesel, the special master determined that he "d[id] not have sufficient evidence to conclude that this claim possesses a reasonable basis to proceed, based merely upon counsel's assertion that [the expert] might in the future offer a case-specific opinion favorable to [p]etitioners[]." Id. Upon review of the medical records filed in this case, any findings an expert might have offered would not have overcome the deficiencies in petitioner's case.

As support for petitioner's application for attorneys' fees and costs, petitioner attached an email exchange between petitioner's counsel and Dr. Steinman in early December 2017. Before counsel appeared in this case, counsel emailed Dr. Steinman asking if he could assist with the case and whether he believed the case had merit, to which Dr. Steinman responded this "case seems plausible for filing." Pet. Reply, Ex. 1 at 1-2. The email exchange, however, provides no evidence or objective basis to show that Dr. Steinman reviewed medical records or provided a preliminary medical opinion to support the allegations set forth in the petition.

Petitioner argues "[t]he mere fact of Dr. Steinman's involvement [] should be enough for this court to find that [p]etitioner's petition had a reasonable basis." Pet. Reply at 7. However, "expert testimony in and of itself does not determine reasonableness." Murphy, 30 Fed. Cl. at 62. Therefore, the undersigned finds that Dr. Steinman's willingness to review the medical records and provide an opinion does not support a finding of reasonable basis.

### III.   CONCLUSION

For the reasons discussed above, the undersigned finds that petitioner is not entitled to an award of reasonable attorneys' fees and costs.

The Clerk of Court shall enter judgment in accordance herewith.[8]

**IT IS SO ORDERED.**

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master